**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
# For the Eleventh Circuit

————————————————

No. 24-12493
Non-Argument Calendar

————————————————

In re: SHIRLEY WHITE-LETT,

*Debtor.*

————————————————————————

SHIRLEY WHITE-LETT,

*Plaintiff-Appellant,*

*versus*

SHELLPOINT MORTGAGE SERVICING,
SELECT PORTFOLIO SERVICING, INC.,

*Defendants-Appellees.*

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-01717-WMR

————————————————

Before NEWSOM, GRANT, and BLACK, Circuit Judges.

PER CURIAM:

Shirley White-Lett, proceeding *pro se*, sued Select Portfolio Servicing, Inc. ("SPS") and Shellpoint Mortgage Servicing ("Shellpoint") in an adversary bankruptcy proceeding. White-Lett asserted that SPS and Shellpoint should be held in civil contempt because they attempted to collect a mortgage debt that was discharged in prior bankruptcy proceedings. At the summary judgment stage, the bankruptcy court granted summary judgment to Shellpoint but concluded that SPS had violated the discharge order in its attempts to collect the mortgage debt. However, the court did not hold SPS in civil contempt. White-Lett appealed the bankruptcy court's decision to the district court, and the district court affirmed the bankruptcy court. White-Lett now appeals the district court's affirmance to us. After review,[1] we affirm the bankruptcy court and district court.

---

[1] "When reviewing an order of the district court entered in its role as an appellate court reviewing the bankruptcy court's decision, this Court independently examines the factual and legal determinations of the bankruptcy court, applying the same standards of review as the district court." *Iberiabank v. Geisen (In re FFS Data, Inc.)*, 776 F.3d 1299, 1303 (11th Cir. 2015). "Generally, we review *de novo* any determinations of law, whether by the bankruptcy court or district court, and review the bankruptcy court's factual findings for clear error." *Id.* "We review the bankruptcy court's denial [of] a motion for sanctions for abuse of discretion." *Id.*; *see also McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000) ("This court reviews the grant or denial of a motion for civil contempt under the abuse of discretion standard."). We review a bankruptcy court's discovery rulings for an abuse of discretion. *Romeo Charlie, Inc. v. Piper Aircraft Corp. (In re Piper Aircraft Corp.)*, 362 F.3d 736, 738 (11th Cir. 2004).

## I.  DISCUSSION

White-Lett argues that (1) the bankruptcy court abused its discretion by declining to hold SPS in civil contempt for its violation of the discharge order, and (2) the bankruptcy court abused its discretion by declining to sanction SPS for discovery misconduct. We address each issue in turn.

As an initial matter, we note that White-Lett has abandoned any challenge to the bankruptcy court's grant of summary judgment to Shellpoint because she has failed to brief that issue. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned." (citations omitted)).  Therefore, we do not address the bankruptcy court's ruling as to Shellpoint.

*A.  Civil Contempt*

Under 11 U.S.C. §§ 524(a)(2) and 105(a), a bankruptcy court may hold a creditor in civil contempt for attempting to collect a debt discharged in bankruptcy proceedings.  *Taggart v. Lorenzen*, 587 U.S. 554, 559-60 (2019).  Together, sections 524(a)(2) and 105(a) "authorize a court to impose civil contempt sanctions [for attempting to collect a discharged debt] when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Id.* at 560.  These statutory provisions "incorporate the traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction." *Id.* at 560-61.  The Supreme Court has stated,

"This standard reflects the fact that civil contempt is a severe remedy, and that principles of basic fairness require that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt."  *Id.* at 561 (internal quotation marks and citations omitted) (alteration adopted).

The bankruptcy court's statutory authority to hold a party in civil contempt under §§ 524(a)(2) and 105(a) is discretionary. *See Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1546 (11th Cir. 1996) ("In bankruptcy proceedings, the court has discretionary statutory powers under 11 U.S.C. § 105(a) that states 'The court *may* issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'" (quoting 11 U.S.C. § 105(a))).

In deciding whether to hold SPS in civil contempt in this case, the bankruptcy court held a bench trial solely as to the issue of whether SPS knew about the order discharging White-Lett's mortgage debt during the time period when it attempted to collect that debt.  At trial, SPS's corporate representative, Diane Weinberger, testified that SPS did not know about the discharge order because there was no information in SPS's file regarding White-Lett's loan about the order or the bankruptcy proceedings that produced the order.  Weinberger also testified that there was no information in the file that White-Lett had ever told an SPS employee about the discharge order or her bankruptcy proceedings.

On the other hand, White-Lett testified that she told an SPS employee about the discharge order and bankruptcy proceedings during a phone call in December 2013.  However, she conceded

that she did not mention those matters to any SPS employee on any other occasion.

The bankruptcy court found that SPS did not know about the discharge order and for that reason declined to hold SPS in civil contempt. The court found that Weinberger's testimony was credible and supported by documentary evidence, *i.e.*, SPS's file regarding White-Lett's loan. The court also found that White-Lett's testimony was not credible based on her demeanor at trial, inconsistencies in her statements about the phone call, and her mischaracterization of facts throughout the proceedings. Therefore, the court did not credit White-Lett's testimony about the phone call with an SPS employee.

We must give great deference to a trial judge's credibility determinations because "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985); *see also* Fed. R. Civ. P. 52(a)(6) ("[T]he reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."); Fed. R. Bankr. P. 7052 (applying Rule 52 to bankruptcy adversary proceedings). However, we do not need to defer to a trial judge's credibility determinations if "[d]ocuments or objective evidence . . . contradict the witness' story" or if "the story itself [is] so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Anderson*, 470 U.S. at 575.

6                    Opinion of the Court                    24-12493

White-Lett has not shown a contradiction in Weinberger's testimony to undermine the bankruptcy court's determination that Weinberger was credible.  White-Lett has not pointed to any potential inconsistency in Weinberger's testimony, and the record does not reveal any.

Ultimately, the bankruptcy court's credibility determination came down to a judgment call as to whether to credit White-Lett's testimony or Weinberger's testimony, which was supported by the absence of any indication in the relevant records that White-Lett had told an SPS employee about the discharge order.  In light of the great deference we must afford to the bankruptcy court on this issue, we do not see any error in the bankruptcy court's decision to credit Weinberger over White-Lett.  *See id.*

After "independently examin[ing] the factual and legal determinations of the bankruptcy court, applying the same standards of review as the district court," we hold that the bankruptcy court did not abuse its discretion in declining to hold SPS in civil contempt.  *See Iberiabank v. Geisen (In re FFS Data, Inc.)*, 776 F.3d 1299, 1303 (11th Cir. 2015).  The bankruptcy court did not clearly err by concluding that SPS did not know about the discharge order based on its determination that Weinberger was credible and that White-Lett was not credible.

Because the bankruptcy court did not clearly err by finding as a matter of fact that SPS did not know about the discharge order, it was well within the court's discretion to conclude that civil-contempt sanctions against SPS were not warranted based on that

finding. *See Jove Eng'g*, 92 F.3d at 1546; 11 U.S.C. § 105(a); *Taggart*, 587 U.S. at 560-61; *see also* Fed. R. Civ. P. 65(d)(2) (stating that injunctions and restraining orders bind only those parties "who receive actual notice of [them]"); *Cypress Barn, Inc. v. W. Elec. Co., Inc.*, 812 F.2d 1363, 1364 (11th Cir. 1987) (explaining that a party could not be held in civil contempt for violating an order when he never received notice of it). Accordingly, we affirm the bankruptcy court and district court on this issue.

## B. Discovery Sanctions

White-Lett also argues that the bankruptcy court abused its discretion by declining to impose sanctions on SPS for certain misconduct it purportedly engaged in during discovery. Specifically, she asserts that SPS failed to produce numerous important documents and did not comply with the bankruptcy court's discovery orders.

The bankruptcy court did not abuse its discretion by declining to impose discovery sanctions on SPS because it did not "misappl[y] the law or base[] its decision on factual findings that are clearly erroneous." *Daughtrey v. Rivera* (*In re Daughtrey*), 896 F.3d 1255, 1274 (11th Cir. 2018) ("In conducting abuse of discretion review, we recognize the existence of a range of possible conclusions the trial court may reach and must affirm unless we find that the court has made a clear error of judgment, or applied the wrong legal standard." (internal quotation marks omitted)); *Consumer Fin. Prot. Bureau v. Brown*, 69 F.4th 1321, 1329 (11th Cir. 2023) ("When reviewing discovery motions, wide discretion is proper because a

judge's decision as to whether a party or lawyer's actions merit imposition of sanctions is heavily dependent on the court's firsthand knowledge, experience, and observation." (internal quotation marks omitted) (alteration adopted)).

White-Lett argues that SPS violated the bankruptcy court's October 8, 2021, discovery order because it did not comply with that order's directive to produce certain documents, specifically, bankruptcy quality control reviews and bankruptcy status checks. However, the October 8 order did not make any such directive. Rather, in that order, the bankruptcy court concluded that at that stage of the proceedings SPS had produced all documents requested by White-Lett. Nevertheless, the court noted that White-Lett could request additional documents, and, if SPS asserted a privilege as to any of those documents, it could submit a privilege log.

Nowhere in the October 8 order or any subsequent discovery orders did the bankruptcy court direct SPS to produce additional documents, and White-Lett did not make any further discovery requests. Further, White-Lett conceded later that she never requested the specific documents that are the subject of her argument on appeal. Thus, because White-Lett has not shown that SPS failed to comply with either a discovery request or a court order, she cannot show that the bankruptcy court's refusal to sanction

24-12493                Opinion of the Court                9

SPS for failing to produce these documents was an abuse of discretion.[2]

White-Lett also asserts that the bankruptcy court should have sanctioned SPS for failing to produce the entirety of a document titled "Contact History" because it initially only produced a single redacted page of that document. She additionally contends that SPS's counsel improperly directed Weinberger not to answer questions about the redactions during a deposition.

In its August 4, 2021, order, the bankruptcy court addressed SPS's failure to make certain initial disclosures and produce certain documents that White-Lett had requested. In that order, the court found that SPS had, among other things, failed to disclose the existence of the contact history document, a single redacted page of which it had attached to its summary judgment motion. However, the court concluded that the documents SPS had failed to disclose, including the contact history document, should not be excluded as a sanction because there was no indication that SPS had acted in bad faith, and any prejudice suffered by White-Lett as a result of SPS's discovery violations could be remedied by reopening the discovery period. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or

---

[2] Additionally, the record indicates that the bankruptcy quality control reviews and bankruptcy status checks were not documents that SPS could have produced even if the bankruptcy court had ordered it to do so. Weinberger testified during trial that bankruptcy quality control reviews and bankruptcy status checks were simply actions performed by SPS employees to determine whether a loan was in bankruptcy, not discrete documents.

(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). The court also noted that White-Lett did not certify that she had conferred with SPS regarding the production of the documents she had requested, as is required by Fed. R. Civ. P. 37(d)(1)(B). Instead of sanctioning SPS, the court reopened the discovery period, directing SPS to make all necessary disclosures and produce all requested documents. SPS then produced the entirety of the unredacted contact history document.

We consider that the bankruptcy court's decision not to sanction SPS for its discovery violations in the August 4 order fell well within its wide discretion in resolving discovery disputes. Additionally, after SPS produced the entirety of the contact history document, there was no longer any basis for White-Lett to seek discovery sanctions against SPS with respect to that document. Therefore, White-Lett has failed to show that the bankruptcy court abused its discretion on this ground.

The bankruptcy court also did not abuse its discretion by declining to sanction SPS for its counsel's actions during Weinberger's deposition. During that deposition, counsel directed Weinberger not to answer questions about the redactions in the initial version of the contact history document to the extent that her answers violated the attorney-client privilege. The bankruptcy court concluded that the relevant objections were proper and did not constitute an attempt to conceal any information SPS was

required to disclose.  After reviewing the relevant portions of the record, we do not consider that the bankruptcy court's conclusion was an abuse of discretion.

Lastly, White-Lett argues that SPS failed to produce a "summary page" for her loan that Weinberger mentioned at trial.  However, as the district court noted, White-Lett did not raise this issue before the bankruptcy court.  Therefore, we decline to address it. *See Valdez v. Feltman* (*In re Worldwide Web Sys., Inc.*), 328 F.3d 1291, 1300-02 (11th Cir. 2003) (declining to address an issue not raised before the bankruptcy court).

In sum, White-Lett has failed to point to any facts in the record supporting her contention that the bankruptcy court abused its discretion in declining to impose discovery sanctions on SPS.  The record shows that the bankruptcy court acted within its wide discretion in its handling of the various discovery matters raised by White-Lett.  Therefore, we affirm the bankruptcy court and district court on this ground.

## II. CONCLUSION

The bankruptcy court did not abuse its discretion by declining to hold SPS in civil contempt based on its factual finding that SPS did not know about the discharge order while it was trying to collect White-Lett's mortgage debt.  The bankruptcy court also did not abuse its discretion by declining to sanction SPS for its actions during discovery.  Accordingly, we affirm the bankruptcy court and district court.

**AFFIRMED.**